JEAN ARONSON, Respondent, v. GEORGE E. RICKER et al., Appellant.

Kansas City Court of Appeals, January 11, 1915.

1. **NEGLIGENCE: Automobiles: Proper Care: Humanitarian Rule.** A woman drove an electric automobile along a crowded business street, in Kansas City, with her view, straight ahead, partially obstructed by two female companions on the front seat. Another woman with a female companion, attempted to walk across the street and not observing the machine it struck her with such force as to knock her down and run over both her legs with both the front and rear wheels and several feet beyond. It was *held*, that the driver of the machine was not exercising the care required by the statute and that the injured woman could hold her liable under the humanitarian rule.

2. ————: **Humanitarian Rule: Statute: Contributory Negligence.** The statute concerning automobiles stating a liability of a driver for injury to others concludes with the words, "unless the injury was caused by. the direct negligence of the injured person contributing directly thereto." It was *held* that this did not prevent a case being made under the humanitarian rule.

3. **ELECTRIC CAR: Statute: Street: Crossing: Care.** Under the statute relating to automobiles (Sec. 8523, R. S. 1909), it is the duty of the driver of such machines along the street, between crossings as well as at crossings, to exercise the highest degree of

care that a very careful peson would use and to not only keep
a lookout "straight ahead," but laterally, as well, and if such
driver fails in these respects he is liable under the human-
itarian rule for injuring a careless pedestrian crossing the
street.

4. HUSBAND AND WIFE: Common Law: Married Woman's Act.
At common law the husband is liable for the wrongful negli-
gent act of the wife though committed out of his presence and
without his procurement or knowledge. And our Married
Woman's Act as to property rights of married women and
their right to sue and liability to be sued without joining the
husband, has not altered the common law.

5. CONSPIRACY: Proof: Joint Liability: Nature of Charge.
Though several wrongdoers are charged with conspiring in the
commission of the wrong, the conspiracy need not be proven,
unless judgment against several is insisted upon, in which
case the conspiracy or joint act in combination must be proven.
So the conspiracy must be proven if the wrong charged is such
as can only be committed by conspiracy, or combination.

6. INSTRUCTIONS. The practice of asking a great number of
instructions is condemned.

7. NEGLIGENCE. It was proper for a trial court to refuse to
declare, as a matter of law, that it was not negligence to have
two companions seated on the front seat of an electric automo-
bile while driving in a crowded street, when the evidence had
shown that such fact obstructed the view ahead.

8. HUMANITARIAN RULE: Plaintiff's Last Chance. An in-
struction was properly refused which declared that the plain-
tiff could not recover under the humanitarian rule if she "had
the last clear chance to step aside and negligently failed to do
so." It omits to submit that she was aware of the immediate
danger.

9. INSTRUCTIONS: Appendicitis. Where there was competent
evidence that appendicitis could result from being run over
by an automobile, it was proper to submit that as an element
of damage.

10. VERDICT: Excessiveness. A verdict for $3500 as damages for
being knocked down and run over by an automobile weighing
3500 pounds and inflicting severe injury is not excessive.

11. LAWYERS: Misconduct. Where a lawyer for one party to a
case on trial in which his client obtains a verdict, makes an
improper remark to the lawyer on the other side, during recess,
when a juryman is standing near, it is the duty of the lawyer
185MoApp34

addressed to immediately report to the court. And if he waits until after the trial goes against him it is too late.

12. **TRIAL, PRACTICE: Witnesses.** A trial judge may properly interrogate witnesses during the course of a trial.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson,* Judge.

AFFIRMED.

*Hadley, Cooper & Neel* for appellant.

*H. L. Jacobs, Jos. F. Aylward* and *I. J. Ringolsky* for respondent.

ELLISON, .P. J.—Plaintiff's action was instituted to recover damages for personal injury inflicted upon her by being run over by an electric automobile. She recovered judgment for $3500 in the trial court.

Defendants are husband and wife and at the time of the injury to plaintiff, the car was being operated by the wife, the husband not being present. One of the principal objections to the judgment is, that the evidence failed to make a case for plaintiff sufficient to submit to the jury and that therefore the court erred in not sustaining a demurrer to the evidence. Plaintiff's action is presented under the humanitarian rule and unless it be true, as defendants insist, that an action cannot be maintained against the driver of an automobile under that rule, the objection, clearly, is not well taken. For the evidence in behalf of defendants themselves, leaves no doubt that a case was made for a jury. That evidence tended to show that the car was four seated, that all the seats were occupied, Mrs. Ricker driving, with a female companion sitting beside her and facing forward, while two other female companions were on the other seat facing to the rear; that the car had a large glass front, but the view straight ahead was obstructed to the driver

when persons occupied the front seats, though persons or obstructions, in the street could be seen when not directly in front of the car. The car had a maximum speed of twenty-five miles an hour, though at the time of the injury to plaintiff, it was coasting, that is, going without application of the power, at a speed about equal to a person walking; at any rate, not exceeding three or four miles an hour. It had the best of brakes and, at the speed it was going, could have been stopped almost instantly, Mrs. Ricker stated, in the space of one foot. The place was on Eleventh street between Main and Walnut streets, a business center said to be more thronged with pedestrians and vehicles than any other part of Kansas City. Plaintiff and a companion were walking west on the south side of Eleventh street, at about noon; they reached the alley and wishing to avoid the walk along where a new building was being erected, turned from the sidewalk to cross over to the north side of Eleventh street which, at that place, was about forty feet in width between curbs. There was considerable wind and plaintiff walked with her head down holding on to her hat. When they reached about the center of the street plaintiff was struck by defendant's car, knocked down and her legs run over by both the front and back wheel of the car. Mrs. Ricker stopped the car in about six feet beyond.

She says that the first she saw of plaintiff was when she was right upon her, but it is clear, the circumstances considered, that a jury would have a right to say she could have seen her as she approached the place. The law aids us in this statement. The statute (Sec. 8523, R. S. 1909) is that the driver of such a machine upon a road or street "much used for travel shall use the *highest* degree of care that a *very* careful person would use, under like or similar circumstances." Considering that Eleventh street, at this point, was a business thoroughfare crowded with

people and vehicles, it was Mrs. Ricker's duty to keep a lookout for persons liable to do just what this plaintiff did, that is, fail to observe every approaching car. It was her duty to keep a lookout, not only "straight ahead," but *laterally* ahead (Holmes v. Ry. Co., 207 Mo. 149, 163) and this she could have done, even though she allowed her companions, on the other seat, to obstruct her view, immediately in front.

Mrs. Ricker stated that she was moving so slowly that she could have stopped in one foot, yet she was going with sufficient force and swiftness to knock plaintiff down and run over both of her legs and six feet beyond before she stopped. This would leave the jury with the right to say she was either going at a very rapid speed or that she was not diligent in attempting to stop.

So it seems too clear for argument that a case was made for plaintiff and that too without calling to her aid the greater part of the evidence in her own behalf. In Ostermier v. Implement Co., 255 Mo. 128, we find the following portion of Judge SCOTT's opinion in Vaughn v. Scade, 30 Mo. 600, involving the duty of drivers and of horses attached to vehicles, quoted and specially stated to be the law applicable to automobiles: "He who undertakes to drive a carriage in a crowded street must exercise a diligence proportionate to the dangerous nature of that employment. He must know that there are women and children in the street, and that their necessities compel them to be there. If one is found off the crossing, he is not therefore liable to be run over. When, by a diligence proportionate to the nature of the service in which one is employed, he can avoid injuring one who is found off the crossing, it is his bounden duty to use reasonably that diligence in order to do so." We therefore pass to the point referred to above, that the humanitarian rule does not apply to personal injuries inflicted by electric or other automobiles.

The statute aforesaid, after declaring the care to be used by drivers of such machines and the liability incurred for injuries, adds the words "unless the injury or death is caused by the direct negligence of the injured or deceased person contributing directly thereto." This no more disallows the application of the humanitarian rule than does section 5425, Revised Statutes 1909, which declares that the injured party's negligence may be shown "as a defense to the action;" and we held that the latter "phrase was not intended to annul the humanitarian rule;" that it was not intended to permit one person to kill another, when he could avoid it, "simply because such person was negligent." [Burton v. Ry. Co., 176 Mo. App. 14, 19.]

It is contended by defendants that as the wrongful act of negligence was done by Mrs. Ricker alone in her husband's absence and without his knowledge, she alone is liable. This contention is based on section 8304, Revised Statutes 1909, of the Married Woman's Act, authorizing her to transact business on her own account and to sue and be sued without joining her husband. At common law the husband is civilly liable for the torts of his wife, though committed out of his presence and without his authority. Though several wrongdoers are jointly charged with conspiring and combining in the commission of a wrong, yet, as the charge of conspiracy is mere aggrevation, and the damage is the gist of the action, you may recover judgment against the one shown to have done the wrong, though you fail to prove the conspiracy. [Hunt v. Johnson, 23 Mo. 432; Hutchins v. Hutchins, 7 Hill, 104; Van Horn v. Van Horn, 56 N. J. Law, 318; Brankley v. Platt, 40 Md. 529; Porter v. Mock, 50 W. Va. 581.] But if you insist upon a judgment against several conspirators, you must prove the conspiracy or combination between them. [Laverty v. Vanarzdale, 65 Pa. St. 507; Hutchins v. Hutchins, 7 Hill, 104; Porter v. Mock, 50 W. Va. l. c. 584, 585, 586; Brankley

v. Platt, 40 Md. l. c. 533; Van Horn v. Van Horn, 56 N. J. L. l. c. 322.] And if the wrong is such that it can only be committed by a combination or conspiracy of two or more, then you must prove the conspiracy. [Collins v. Collins, 117 Pa. St. 35; Rundell v. Kalbfus, 125 Pa. St. 213; 8 Cyc. 692.]

The foregoing is the rule where husband and wife are joined as defendants charged with combining and conspiring to commit the wrong. [Nichols v. Nichols, 147 Mo. l. c. 392 (instruction 3); Leavell v. Leavell, 114 Mo. App. 24, 32.] Though in the latter case by inadvertence it is said, at top of the latter page, that if the wife alone committed the wrong, out of the presence of the husband, he could not be held. That expression is liable to be misunderstood. In that case the plaintiff (as in the Nichols case) insisted on holding both husband and wife on the charge of having combined and conspired together.

The Married Woman's Act does not have the effect to change the law thus stated. [Taylor v. Pullen, 152 Mo. 434; Nichols v. Nichols, 147 Mo. 387; Flesh v. Lindsay, 115 Mo. 1; Bruce v. Bombeck, 79 Mo. App. 231; Leavell v. Leavell, 114 Mo. App. 24, 32.] Defendant, however, insists that these decisions were based on other sections of the Married Woman's statute which relate to liability of her property execution, and her property rights generally, but that section 8304, made the wife "a single woman so far as carrying on her business and suing and being sued is concerned." We are, however, of the opinion the distinction between these sections does not make the cases aforesaid any less applicable to section 8304, than other parts of the Act.

Far too many instructions were asked by defendant; of these, a large number were given and many refused. Those given covered every branch of the defense, and in connection with the four which were

asked by plaintiff, left no room for the jury to be
misled.

In view of the evidence on that head, it was not
error to refuse to say to the jury, as a matter of law,
that it was not negligence in Mrs. Ricker to have four
persons in the car. It was not error, in view of instruc-
tions given, to refuse instruction 13, concerning negli-
gence. Nor was it error to refuse instruction 16, which
declared that Mrs. Ricker was not required to use the
same degree of care to look for people on the street
not at a crossing, as on such crossings. The statute
makes no distinction of that character. On the con-
trary the care required by the statute is directed to be
exercised while driving the machine "on, upon along
or across public streets." Besides the instruction was
properly refused under the view expressed in Oster-
mier v. Implement Co., 255 Mo. supra.

Instruction number 11, as offered by defendants,
would have cut out plaintiff's right under the humani-
tarian rule. The qualification added by the court put
that phase of the case in the instruction and was, of
course, proper.

Complaint is made of the refusal of defendants
27th instruction wherein the jury was told that if "the
plaintiff had the last clear chance to have avoided the
accident and carelessly and negligently failed to do
so," she could not recover. The instruction was not
proper. It omits the necessary hypothesis of plaintiff
being aware of the fact that she was to be immediately
run over, unless she stepped aside. There were some
other objections made which we think are not substan-
tial.

The criticisms made of plaintiff's principal in-
struction as set out in defendant's 13th point are tech-
nical and unsubstantial.

There was evidence that plaintiff shortly after her
injury was operated upon for appendicitis and for tu-
mor and defendants insist that while no damages were

asked on account of the tumor, yet they were allowed for appendicitis, when (as they insist) there was no evidence connecting the latter ailment with the injury inflicted by the machine. Whether appendicitis could result from the injury and whether it did result, was made a sharp issue at the trial. There was substantial and trustworthy evidence supporting the affirmative of those issues and under a familiar rule we cannot interfere with the action of the jury.

We think defendant's insistence that the verdict for $3500 is excessive, has no support in the record. Plaintiff was struck by a machine weighing without counting occupants, 3500 pounds, running on hard rubber tires at a speed sufficient to knock her prostrate on the street, run over both legs with both the front and rear wheels and several feet further, before it could be stoppel with emergency brakes. The suffering which she, and other witnesses, say followed can well be believed, and hence the recompense to her is by no means too large.

It seems that the trial court put additional questions to witnesses. Defendants say that thereby their case was prejudiced in the minds of the jury. We have examined the record and find the court in no way abused the discretion it has in that respect.

Finally complaint is made as to remarks said to have been made during a recess of the court by one of plaintiff's counsel to two of defendant's counsel, when a juryman was nearby, to the effect that the case was being defended by insurance companies. This was not called to the attention of the court until seven days after the trial. It was the duty of defendant's counsel to have immediately reported to the court and not waited to see if his client would prevail. If we concede the remark was heard by the juryman, it cannot avail defendant in the circumstances stated.

After a full examination of the record we are satisfied that no error was committed and that the judg-

ment was for the right party and it is therefore affirmed. All concur.