LEMURAL HORNBUCKLE and CORA HORN-BUCKLE v. W. E. McCARTY and BERNARD MALUGEN, Appellants.

Division One, July 27, 1922.

1. **NEGLIGENCE: Automobile: Injury to Pedestrian: Case for Jury.** Evidence that the driver of a motor truck, as he turned the traffic post at the intersection of two busy streets and headed into the cross street and before he reached the little boy approaching on the line of the sidewalk on the far side of the cross street, could have seen, had he looked in the direction he was driving, that the boy was approaching and about to enter the path of the truck, and that he could also have seen that the boy, from his continued progress, the direction he was looking and his general attitude, was wholly oblivious to the approach of the truck, and that he did not look but had his face turned in the opposite direction, heedless of where he was going and of the obstacles or dangers he might encounter, is amply sufficient to carry to the jury the case of the parents against the driver and his employer for damages for negligently killing the child.

2. ————: ————: ————: ————: **Negligence of Child: Cause of Death.** In such case, the negligence of the seven-year-old child is not involved; but if the driver of the motor truck, in the exercise of ordinary care, would have discovered the boy's perilous

position and his obliviousness of his peril, in time, by the exer-
cise of ordinary diligence, to have avoided a collision with him, the
driver's negligence, and not the boy's walking against the truck,
was the juridical cause of the child's death.

3.  ———:  ———:  ———:  Instruction:  Knowledge of Deceased's
Danger: Omission: Harmless.  An instruction for plaintiff which
does not expressly require the jury to find that the driver of the
auto-truck "knew, or by the exercise of ordinary care could have
known, that the deceased was in danger and was oblivious there-
to," is technically defective; but in this case, in view of the fact
that it stands conceded that the driver would have discovered
that deceased was oblivious of his danger had he but looked and
observed with any degree of care, the omission was harmless.

4.  ———:  ———:  ———:  ———:  Looking Laterally.  It is the duty
of the driver of an automobile not only to look straight ahead,
but laterally ahead; and if by looking laterally ahead, as his
truck rounded a corner, he would have discovered, before the front
of the truck passed the line of the boy walking on the cross street
toward the side of the truck, that a collision between them was
imminent, the defendants are not entitled to an instruction re-
quiring the driver to look straight ahead only.

5.  ———:  Excessive Verdict: Loss of Child: Earning Capacity.  The
damages recoverable by parents for the negligent killing of their
minor child are limited to the pecuniary value of the child's
services during his minority, less the expense of supporting and
educating him.  But a just estimate of the value of the prospec-
tive services of a seven-year-old child can be reached only upon
considerations of the. most general character, and much must
therefore be left to the common sense and fairness of the jury.
In the natural order of things, and in view of the limitations of
the statute prohibiting children under fourteen years of age from
being employed in practically all gainful occupations, the value
of the services of a child before he reaches that age is negligi-
ble.  The present value of his services during the succeeding seven
years cannot reasonably exceed five thousand dollars, and in view
of all these things the judgment in this case is affirmed only on
condition that plaintiffs remit one-half their verdict for $10,000,
as of. the date of the judgment.

Appeal from Butler Circuit Court.—*Hon. Almon Ing,*
*Judge.*

AFFIRMED (*upon condition*).

*Henson & Woody* for appellants.

(1) Under the facts as developed in this case, there is no liability on the part of the defendants, or either of them, and their demurrer should have been sustained. McGee v. Railroad, 214 Mo. 530, 541; King v. Railroad, 211 Mo. 1; Degonia v. Railroad, 224 Mo. 564, 595; Burge v. Railroad, 244 Mo. 76, 101; Guyer v. Railroad, 174 Mo. 344; Keele v. Railroad, 258 Mo. 62, 77; Loring v. Railroad, 128 Mo. 349; Branstetter v. Railroad, 225 S. W. 1035; Markowitz v. Railroad, 186 Mo. 350; Gray v. Railroad, 179 Mo. App. 541; Lee v. Jones, 181 Mo. 291, 299; Shields v. Costello, 229 S. W. 411; Hight v. Bakery Co., 168 Mo. App. 431; Frank v. Free, 190 Mo. App. 73, 175 S. W. 217. (2) Plaintiffs' instruction numbered one is prejudicially erroneous. Ellis v. Met. St. Ry. Co., 234 Mo. 657, 680; Eckhard v. Transit Co., 190 Mo. 593, 618; Albright v. Joplin Oil Co., 229 S. W. 829; Rubick v. Sandler, 219 S. W. 406; Stark v. Bingham, 223 S. W. 946; Keele v. Railroad, 258 Mo. 62. (3) Defendants' instructions numbered three, four, six and nine should have been given, and their refusal was prejudicial error. Hight v. Bakery Co., 168 Mo. App. 433, 458; Frank v. Free, 190 Mo. App. 73; Battles v. Railway Co., 178 Mo. App. 596, 628; Gray v. Railroad, 179 Mo. App. 541; Schmitz v. Railroad, 46 Mo. App. 387. (4) The verdict of the jury is excessive, and could only have resulted from passion and prejudice. Dugdale v. Light & Power Co., 195 Mo. App. 243; Kelley v. Higginsville, 185 Mo. App. 55; Hickman v. Railroad, 22 Mo. App. 344; Parsons v. Railroad, 94 Mo. 286. (5) The injury to the deceased which caused his death was received as a result of his own act in running into the truck, and not on account of any negligence on the part of the defendants. Battles v. Railroad, 178 Mo. App. 627; McNulty v. Railroad, 166 Mo. App. 439; Spillane v. Railroad, 135 Mo. 414; Payne v. Railroad, 136 Mo. 562; Webb v. Railroad, 196 S. W. 86; Murphy v. Railroad, 228 Mo. 56; Gray v. Railroad, 179 Mo. App. 541.

*David W. Hill* and *Sam M. Phillips* for respondents.

(1) Plaintiffs were entitled to recover under the facts shown in this case. Eisenman v. Griffith, 181 Mo. App. 183; Spivack v. Bakery Co., 214 S. W. 166; Rowe v. Hammond, 172 Mo. App. 203; Hopfinger v. Young, 179 S. W. 747; Rasmussen v. Whipple, 211 Mass. 546; Nelligan v. Fountain, 225 Mass. 329; Berry on Automobiles (3 Ed.) sec. 468; Akers v. Fulkerson, 153 Ky. 228; Deputy v. Kimmell, 73 W. Va. 595, 51 L. R. A. (N. S.) 989; Ayers v. Ratshesky, 213 Mass. 589. (2) Defendant's chauffeur in suddenly turning the truck from the northern direction, which it was pursuing on Fourth Street or Broadway, west into Maple Street, without sounding the horn or giving other signal of the approach of the car, and while he was looking back over his shoulder, and not in the direction in which he was proceeding, was an act of gross negligence. Vaughn v. Davis & Sons, 221 S. W. 783; Nelligan v. Fountaine, 225 Mass. 329; Sec. 7593, R. S. 1919. (3) The evidence shows that at the time defendant's chauffeur turned the truck from Broadway west into Maple Street, and in fact until the time he struck deceased, the chauffeur was looking back over his shoulder at a boy that was standing in the back end of the truck holding a barrel. At the time, Beyrel Hornbuckle had already left the sidewalk on the south side of Maple Street and was some nine or ten feet out in the street, and if the defendant's chauffeur had been looking in the direction that he should have been looking, that is, the direction in which he was turning, he could readily have seen Beyrel, who was then walking in a north-western direction across Maple Street looking in a western direction, that is, in a direction away from the automobile, in time to have warned him of the approach of the car, or in time to have avoided striking him entirely, for the testimony shows that he could easily have turned the car in behind Beyrel or could have stopped it in eight

or ten feet if he had been looking at what he was doing, or he could have shouted or warned him in some other manner of the approach of the car. Eisenman v. Griffith, 181 Mo. App. 183; Proctor v. Poplar Bluff, 184 S. W. 123; O'Donnell v. Hannibal, 144 Mo. App. 155; Norton v. Cramer, 180 Mo. 536; Sutter v. Kansas City, 138 Mo. App. 105. (4) The verdict of the jury in this case is not excessive. Miller v. So. Pacific, 226 Mo. 19; Ellis v. Met. Street Ry. Co., 234 Mo. 657; Bright v. Thatcher, 202 Mo. App. 301. Section 4219 allows damages in this kind of cases up to the amount of $10,000. Any verdict for a sum greater than $10,000 would be excessive; that is, more than allowed by law. Any sum under $10,000 would not be excessive or more than allowed by law. There is no way of exactly fixing the amount of damages in cases of this kind. There is no question of law at issue, it is just a matter of opinion and the opinion of one man might or might not control the opinion of others. The jury fixed the amount at $10,000. This was their judgment and opinion of what would be right and just in the matter. The trial judge approved their verdict and opinion and overruled the motion for new trial. It was his judgment that the verdict should not be disturbed. No living man can tell what the value of Beyrel's services would have been to his parents. The statute leaves this matter to the discretion of the jury. Even if this court should consider the verdict in this case excessive, still it should not reverse and remand this case for that reason, because under the facts this court has the right to order a *remittitur* of such amount as it may believe the verdict to be excessive. Cook v. Globe Printing Co., 227 Mo. 471, 561; Midwest National Bank v. Davis, 223 S. W. 412; Riggs v. Railway, 212 S. W. 878; Gaty v. United Rys. Co., 227 S. W. 1041.

RAGLAND, C.—Plaintiffs by this action seek to recover damages for the death of their minor son, Beyrel, who was run over and killed by a motor truck, at the

crossing of Fourth and Maple Streets, in Poplar Bluff, on the 12th day of June, 1920.

Fourth Street, also known as Broadway, ran north and south; Maple Street, east and west. The former approached the latter from the south on a rising grade, which reached its crest at the intersection. Maple Street from that point proceeded west on a descending grade. Fourth Street was forty feet wide, and Maple about twenty-five. Both streets were paved, and at the intersection of their median lines there was a traffic post. The crossing was in the business district of the city, and Fourth Street in particular was extensively used for pedestrain travel and traffic of all kinds.

Plaintiffs' son was seven years and eight months old. He was an intelligent boy, and in all respects normal and healthy. He had attended school; gone around town by himself, and had ridden in automobiles and knew about them.

The truck with which he collided was owned by defendant McCarty, who was engaged in bottling, distributing and shipping Coca Cola and other soft drinks. It was being driven by his employee, and now his co-defendant, Malugen. The driver's seat on the vehicle was in a cab just back of the motor. There were fenders over the front wheels, and extending back from each of these was a short running board, which served as a step for stepping from the roadway into the cab. Immediately back of the cab was the bed of the truck, which extended out beyond the sides of the cab some five or six inches and back over the rear wheels. On the occasion in question it was loaded with cases of Coca Cola; in the rear end there was also a barrel of the beverage, the entire load weighing about 2500 pounds. The truck was equipped with hard-rubber tires, but in running over a paved street at the rate of five or six miles an hour made considerable noise. The length of the vehicle was not shown, except that it was longer than the ordinary touring car. The distance from the short

running board, or step, to the rear wheel was approximately six feet.

On the afternoon of the day heretofore mentioned, plaintiffs' son and another boy of about the same age were walking north across Maple Street. Their line of progress was coincident with that of the sidewalk on the left side of Fourth Street, or approximately so. Beyrel was ahead, and both were eating ice cream cones. On the opposite side of the street from them the truck driven by Malugen was proceeding north at the rate of from six to ten miles an hour. It turned at the traffic post, and headed west on the north side of Maple Street. At the time the truck was turning around the safety post the Hornbuckle boy had reached a point about half way across the street. He continued walking north, and the truck without slackening speed proceeded on west. Their lines of progress brought them together; the boy came into contact with the running board near the front of the truck on the left side, was thrown down, and the left rear wheel passed over his head, killing him instantly. After the truck had passed, the body of the little boy was lying with the head toward the west, about six feet west of the west line of Fourth Street, and seven and one-half or eight feet south of the north line of Maple. Prior to the collision the deceased seemed to be entirely oblivious of the truck and its movements. As he walked along going north he had his head turned and was looking to the west, and so continued until he came into contact with the machine. Besides Malugen there was another boy or man on the truck—in the rear on or near the barrel of Coca Cola. Just as the vehicle was turning around the traffic post to go west, the driver turned his head to the right and looked back over the load toward the man on the rear end and continued so to look until the collision. After the machine turned it proceeded along and near the curb on the north side of Maple Street. As the front end passed the west line of Fourth Street the deceased was walking north

along that line and was about eight feet from the north line of Maple. There was sufficient space for the truck to have passed behind him instead of immediately in front of him. No horn was sounded or warning given, nor was the speed of the truck slackened until after the collision. The truck was not equipped with a horn, or if so, it was not working. With the load it had it could have been stopped within six feet, if moving at the rate of six miles per hour; and within from eight to ten feet, if going at the rate of eight or ten miles an hour.

The facts just narrated are those which the plaintiffs' evidence tended to establish. The essential conflicts introduced by defendants' evidence were, that both boys were running and that the deceased ran into the truck; that the driver was at all times looking ahead in the direction in which he was moving; and that the truck could not have been stopped within the space of from six to ten feet. Malugen, the driver, testified:

"I was driving the truck the day the boy got killed; remember making the turn at the corner of Fourth and Maple; I did not see the boy before I got to the crossing; when I first saw him he was on the south side of my truck, right at the side of the running board; the running board was short; he was within one or two feet of the car; I was going west; immediately when I saw him, I hollered at him to look out and throwed on the brakes, and the next thing I knew the truck run over him. He was right by the running board, the hood is about four or four and one-half feet, and the step was right back of the engine; he was about even with where I was sitting when I first saw him; I do not recall what I said to him; just a moment or two after I saw him, saw he was looking around the other way, I did that; he had his shoulder turned to me and I saw he didn't see the truck and I hollored at him and throwed on the brakes. I did that as soon as I could after I saw him. . . .

"I could not have stopped the truck after the boy walked into it in time to have prevented the hind wheel

from running over him; I tried my best; throwed on my brakes, but the car was going down hill there; stopped the car some ten or fifteen feet from where it run over him.''

The case submitted to the jury was based on humanitarian doctrine. No question is raised as to the sufficiency of the petition. The answer, after denying generally the allegations of the petition, alleged that the death of the deceased ''came as a direct result of his own act in running against the moving truck being operated by defendants, and not on account of any carelessness on the part of defendants, or either of them.''

The jury returned a verdict in favor of plaintiffs, assessing their damages at $10,000. From a judgment entered in accordance therewith defendants appeal.

In seeking a reversal of the judgment, appellants rely upon: (1) the refusal of the trial court to direct a verdict for them; (2) the giving of an instruction asked by plaintiffs and the refusal of others offered by defendants; and (3) excessiveness of the verdict.

I. Appellants contend that they were entitled to a directed verdict because it was shown that the death of plaintiffs' son ''came as a direct result of his own act in running against the moving truck, . . . and not on account of any carelessness on the part of defendants.'' There was ample evidence to take

Case for Jury.

the case to the jury on the question of the driver's negligence. As he turned the traffic post and headed west on Maple Street and before he reached the pedestrian crossing of Fourth Street over Maple, he could have seen, had he looked in the direction in which he was going, that the boy was approaching and about to enter the path of the truck. He would also have seen that the boy, from his continued progress, the direction in which he was looking and his general attitude, was wholly oblivious of the approach of the machine. With this situation plainly before him

it was incumbent upon him to have warned the boy, or passed behind him, or to have stopped the truck. And one of these precautions he would doubtlessly have taken had he not had his face turned in the opposite direction and been looking back toward the rear of the truck, heedless of where he was going and of the obstacles or dangers that might be encountered in front of him.

The negligence, if any, of the deceased is not involved in the case. If, as the evidence tended to show, the driver of the truck in the exercise of ordinary care would have discovered the boy's perilous position and his obliviousness of such peril in time, by the exercise of ordinary diligence, to have avoided the collision, the driver's negligence and not the boy's walking (or running) against the machine was the juridical cause of the latter's death. [Aronson v. Ricker, 185 Mo. App. 528, 532, 533.]

II.   The material portion of plaintiffs' principal instruction was as follows:

"   . . . if you find  . . .  that deceased was just before said collision walking north across Maple Street on the west side of Broadway, toward the course of the approach of, and in imminent **Oblivious of Peril: Driver's Knowledge.** danger of being struck by said automobile truck, and that said deceased was at said time oblivious to his own danger, or ignorant of the presence of defendant's truck, and that the driver of said truck saw, or by the exercise of ordinary care might have seen, the said deceased so walking north on said west side of Broadway, approaching the point of collision, and in a position of imminent peril from said truck, if you find and believe from the evidence he was in such a position of imminent peril, in time thereafter, by the exercise of ordinary care on his part, and by means of appliances at hand, and with reasonable safety to the occupants and contents of said truck, to have warned deceased, or to have stopped said

truck, or to have changed the course thereof and thereby averted the collision with deceased, and negligently failed to do so, and that by reason and as a direct result thereof, deceased walked against said auto-truck, and was knocked down and run over thereby and killed," etc.

Appellants' criticism of the instruction is, that it did not require the jury to find that Malugen, the driver, "knew, or by the exercise of ordinary care could have known, that the deceased was in danger and was oblivious thereto." The instruction was technically defective in not requiring an express finding that the driver in the exercise of ordinary care would have seen that the deceased was oblivious of his peril. However, the fact that Malugen would have discovered the deceased's unawareness of his danger, had he but looked and observed him with any degree of care, stands conceded on the evidence. His obliviousness was apparent to the eyewitnesses who were in a position to see and note his actions and attitude. Malugen himself testified that when he finally saw the boy, at the running board an instant before the collision, "he was looking around the other way . . . and I saw he didn't see the truck." The omission, therefore, to require the jury to expressly find that the driver saw, or would have seen had he been exercising proper care, that the deceased was not conscious of the approach of the truck, was harmless.

The instruction is further criticized on the ground that it assumes that the deceased was walking. The language that gives color to this construction is the phrase, "so walking north on said west side of Broadway." But this should be read in connection with the preceding part of the instruction which explicitly required the jury to find "that deceased was . . . walking north across Maple Street on the west side of Broadway," etc. There is no merit in the contention.

Defendants by their instruction numbered 3 requested the court to instruct the jury as follows:

". . . if you find and believe from the evidence in this case that the deceased, Lemural Beyrel Horn-

buckle, ran into the side of the truck operated by defend-
ants after the front part thereof had passed
that point, then you cannot find for plaintiffs
even though you may find that defendant, Mal-
ugen, was looking back or to one side and on that account
did not see the deceased before he ran into his truck.''

*Looking Laterally*

This instruction was asked on the theory that the
duty of a driver of an automobile requires him to look
in the direction in which he is going only and not be-
hind nor to one side to see if anything happens after the
front part of his machine has passed.    Generally
speaking that is true, but the driver must look not only
straight ahead but laterally ahead.  [Aronson v. Ricker,
supra; Holmes v. Railroad, 207 Mo. 149, 163.]    Had
Malugen done that he would no doubt have discovered
that a collision between the truck and the boy was im-
minent, before the front of his machine passed the line
of the latter's progress—that it was highly probable
that the truck would run against the boy, or the boy un-
wittingly against the truck.  At least there was evidence
tending to show such facts.  The instruction ignored
this essential phase of the case, and was therefore prop-
erly refused.

There are other assignments of error based on the
refusal of instructions offered by defendants, but ap-
pellants do not press them.  In any event they are in
effect disposed of by what has already been said.

III.   Was the award of $10,000 excessive?  The ex-
penses attending the injury and burial of the deceased
were not shown.  Plaintiffs' recoverable damages are
limited therefore to the pecuniary value of their son's
services during his minority, less the expense of sup-
porting and educating him.  An estimate of the value
of the prospective services of a child, too young to have
developed any particular talents or aptitudes, can be
reached only on considerations of the most general
character.  In such case much must be left to the com-
mon sense and fairness of the jury.  That the services

of their son during his minority would be worth $10,000 to plaintiffs is, however, wholly improbable. Up to the age of fourteen his earnings would have been negligible. This is so not only because he would have had small earning capacity during that period of his minority, but because of the limitations imposed by the statute which prohibits children under fourteen years of age from being employed in practically all gainful occupations. [Laws 1921, p. 184.] The present value of his services during the remaining seven years, less the expense of his education and support, could not reasonably exceed the sum of $5000.

Accordingly the judgment is affirmed on the condition that plaintiffs within ten days from this date enter a *remittitur* of $5,000 as of the date of the judgment; otherwise, the judgment will be reversed and the cause remanded. *Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by RAG-LAND, C., is hereby adopted as the opinion of the court. All of the judges concur.