Jack **COLLINS** and Winona Collins, Plaintiffs-Respondents,

v.

John H. **STROH**, Administrator of the Estate of Devern V. Kisling, Deceased, Defendant-Appellant.

No. 32747.

St. Louis Court of Appeals.

Missouri.

Feb. 20, 1968.

Motion for Rehearing or for Transfer to Supreme Court Denied March 21, 1968.

Donald F. Flint, Clayton, for defendant-appellant.

Gray & Sommers, C. Marshall Friedman, St. Louis, for plaintiffs-respondents.

BRADY, Commissioner.

Plaintiffs, surviving parents of their deceased minor daughter, brought an action to recover for her wrongful death based upon a theory of res ipsa loquitur. The verdict was in favor of plaintiffs in the amount of $15,000.00 and judgment was entered in that amount against the defendant who appeals.

Plaintiffs alleged in the petition: "4. That at the time of the aforesaid plane crash said plane was owned, maintained and controlled by Devern V. Kisling, now deceased, and at the time of said crash was solely and exclusively under the management and control of said Devern V. Kisling."

This crash occurred sometime in the evening of November 8, 1963. Mrs. Larsen came to the apartment shared by Misses Collins and Holloway at about 6:30 P.M. Also present were Mr. Cooper and Mr. Kisling. The parties discussed a proposed flight to Mexico, Missouri in Kisling's plane to a place he knew of in that city. Cooper did not know of this place. However, during the course of the conversation at the apartment both Cooper and Kisling stated they were going to fly the plane. The girls were hesitant about going but Kisling's explanation of his flying experience and knowledge was what persuaded them to go. They left the apartment about 7:30 P.M. and took off from the Creve Coeur Airport at 7:45 P.M. The only witness to the takeoff was Daniel Coates who managed that airport and who described the takeoff as normal. He did not see the four occupants get into the plane and did not know how they were seated.

Lawrence B. Sims, Jr., operation inspector for the Federal Aviation Agency, testified that he investigated the crash at the site on November 9th. He found the airplane to be relatively new, airworthy so far as the proper inspections having been made was concerned, and testified the crash occurred at a point where airplanes of all kinds are routed to fly and subject to anyone's use. The weather was clear and the visibility was approximately seven miles with the result that no instruments would have been required for visibility purposes. Sims could see where the plane crashed by marks in the ground. Parts of the aircraft were scattered over a considerable area, some small pieces being found as far

as one hundred fifty feet from the main wreckage. He did not receive any reports nor have any knowledge of any jet aircraft having any involvement in this crash. It was impossible to tell if the controls had been in good operating condition although he found no evidence of control malfunction. Neither did he find any evidence that would lead to the conclusion the crash was due to mechanical failure, structural failure, in-flight distress, turbulence, or being struck by a duck or other flying object. Sims was unable to determine how the four occupants in the plane had been seated.

The aircraft here involved was a four-place low-wing type equipped with dual controls so that it could be flown from either of the two front seats. When one of the controls was moved in one seat it moved in the other seat also.

The plaintiffs lived with their deceased daughter in West Frankfort, Illinois. Both are employed. Their daughter was twenty years old at the time of her death and would have been twenty-one on January 15, 1964. Mrs. Collins described her daughter as a nice-looking girl, tall, neat, who did not drink or smoke to her knowledge, and who had never been in difficulty with the law, in school, or with any of her employers. At the time of her death she had a full time job and was going to night school at Washington University in St. Louis three nights a week. She had previously attended the University of Illinois for a year and a half. She lived at home in West Frankfort during vacations and on weekends during the two years prior to her death. She would be at home on Saturdays and Sundays only, about every two or three weeks or once a month. When she was at home she did all of the housework and helped take care of her fourteen-year-old brother. She did not contribute any of her money to the support of her family. Her parents paid for her schooling.

During the trial defendant objected to testimony concerning plaintiffs' expectation of receiving services from their daughter

when past her legal age. The matter arose in this fashion. Plaintiffs' counsel was inquiring of Mrs. Collins as to what services her daughter could be expected to perform in the future. Mrs. Collins stated what her daughter had done in the past. The following then occurred: "Q. Can you tell us whether or not it was expected that she would do that in the future? A. Well, she always did when she came home. MR. CRAIG: I object to that unless it is restricted to a period of time. THE COURT: Yes. Sustained. MR. SOMMERS: I agree. Q. (By Mr. Sommers) I mean when she was going to finish her education whether or not she would continue to do that in her recesses from school. That is what I had in mind. MR. CRAIG: I still would raise the objection. It is not limited to her *minority*, your Honor. THE COURT: Sustained." (Emphasis supplied.)

When the parties were in chambers discussing with the court instructions and the matters to be covered during argument plaintiffs' counsel stated he intended to tell the jury " * * * that they are not limited to any damages that they may have sustained up to the time the girl was twenty-one years of age. * * * MR. CRAIG: I object to him arguing that on the grounds there is *no evidence* of any damage over the age of twenty-one years by the very proof that was put in in plaintiffs' case and consequently anything that he would argue as to damages over would be outside of the evidence and purely *speculative, conjecture*. MR. SOMMERS: The only way you can show damages by loss of services of a minor is by showing past actions and that the child was—that—there was no reason to show an expected change in the future. We have shown the past conduct of the child just as the same was in that case there (indicating)." (Emphasis supplied.) The court overruled the objection and permitted the argument. It is unnecessary to set out the exact words used by plaintiffs' counsel to press his argument dealing with the award of damages to the plaintiffs for

services that might be received from their daughter past her majority. There is no dispute as to what was said nor is there any doubt but that plaintiffs' counsel did in fact argue that issue. The motion for new trial does contain an allegation of error relating to the argument made by plaintiffs' counsel. Paragraph 4 of that motion reads: "The Court erred in permitting counsel for plaintiff, over objection of defendant, to argue speculative, conjectural, immaterial and otherwise improper items of damage."

Plaintiffs' verdict directing instruction submitted: "First, Devern V. Kisling either controlled or had the right to control the operation of the airplane, * * *."

■ There are four allegations of error contained in defendant's brief which plaintiffs contend are not properly before this court for ruling. In the first of these defendant attacks the giving of plaintiffs' verdict directing instruction on the ground that it submitted a theory inconsistent with plaintiffs' pleadings. The inconsistency referred to is that the petition alleged the aircraft involved was "owned, maintained and controlled" by Kisling, defendant's decedent, and "at the time of said crash was solely and exclusively under the management and control of said Devern V. Kisling" while the instruction allowed the jury to return a verdict for plaintiffs if it found that Kisling "either controlled or had the right to control the operation of the airplane, * * *." Defendant's motion for new trial attacks this instruction at Paragraph 5 which is divided into four sub-paragraphs. These sub-paragraphs are completely devoid of language which specifically or by fair implication alleges the instruction was inconsistent with the pleadings. It follows that allegation of error is not preserved for our review.[1] It should be noted the court gave Instruction No. 3 at the request of defendant. That instruc-

tion informed the jury their verdict must be for defendant " * * * unless you believe Devern V. Kisling had the *control* of the aircraft at the time of the occurrence * * *." (Emphasis supplied.) So the theory defendant contends should have been submitted to the jury was in fact presented to them albeit not in plaintiffs' verdict directing instruction.

■ The court also gave Instruction No. 6 submitted by plaintiffs which authorized the jury to award plaintiffs such sum as they believed would fairly and justly compensate them for the damages " * * * which you believe plaintiffs sustained and are reasonably certain to sustain in the future, * * *." Defendant's brief contains the allegation this instruction was erroneously given. The transcript discloses defendant's counsel made a general objection at the trial to the giving of plaintiffs' instructions. The motion for new trial contained nine assignments of error. None of these contains any reference to Instruction No. 6 by number nor by the matter dealt with in that instruction. This allegation of error is not preserved for our review as defendant's counsel candidly admits in the reply brief.

■ The third and fourth allegations of error plaintiffs contend defendant has failed to preserve for our ruling deal with the trial court's action in permitting plaintiffs' counsel to argue damages that might accrue to plaintiffs beyond their deceased daughter's majority. Plaintiffs base their argument upon a comparison of the wording of defendant's objections at the trial, in chambers and in the motion for new trial, with the language used in the brief in stating this assignment of error. It is to be recalled that during the trial when defendant's counsel objected to questions directed to Mrs. Collins concerning the expectation

---

1. The case was pled, tried and submitted upon the res ipsa loquitur doctrine. This was clearly understood by all the parties. "Exclusive control" embodies "right to control". Smith v. Wabash Railroad Company, Mo., 416 S.W.2d 85, l.c. [4] 88. The doctrine of res ipsa loquitur is applicable if defendant had either. Cruce v. Gulf, M. & O. R. Co., 361 Mo. 1138, 238 S.W.2d 674 [1].

she and her husband had of receiving services from their daughter beyond her reaching legal age, he stated the grounds for his objection; i. e., "It (the question) is not limited to her minority, your Honor." The trial court sustained that objection. Plaintiffs' argument is that such language makes clear defendant's counsel was basing his objection upon the contention that under the law in this jurisdiction the basis of recovery for the wrongful death of a minor is the value of the child's services to the parents during the child's minority.[2] This is the rule in Missouri. Brewer v. Rowe, 363 Mo. 592, 252 S.W.2d 372. However, when counsel were in chambers discussing with the trial court the instructions to be submitted and the argument they intended to make, and defendant's counsel was informed plaintiffs' counsel intended to argue the jury could consider damages beyond the deceased's minority, the only objection voiced was that there was "* * * no evidence * * *" and that such an argument "* * * would be outside of the evidence and purely speculative, conjecture." Lastly, plaintiffs cite the language used in defendant's brief in stating the allegation of error referring to plaintiffs' counsel's argument. In its pertinent parts it reads: "The Court erred in permitting plaintiffs' counsel over defendant's objection, to argue damages which might accrue beyond the age of majority of plaintiffs' decedent, upon the bases that (a) such damages are not recoverable; * *."

If the defendant has properly preserved for our ruling this contention, then defendant must prevail and the judgment must then be reversed and the cause remanded for new trial upon the issue of damages limited to the minority of the deceased. This for the reason that while the rule has been subject to criticism on the basis of logic[3] as well as on the basis that such a rule seemingly conflicts with what the Missouri Supreme Court has stated to be the legislative intent of § 573.-090, supra,[4] the rule remains in force and effect to the present time and we would be compelled to apply it. In any event it would seem clear the basis for such a rule cannot rest, as defendant implied by his objection to plaintiffs' argument, on the ground proof of damages beyond the deceased's minority could only be speculative and conjectural in nature. This for the reason, as stated in McCrary v. Ogden, supra; Brewer v. Rowe, supra; and Hartz v. Heimos, supra, the amount of the verdict in an action for the wrongful death of a minor inherently involves some element of speculation or resolving of intangibles on the part of a jury. Moreover, such activity on the part of the jury is usually greater the further away from majority the minor is at his death. In fact, testimony by the parents of an 11-year old boy as to the loss of services or pecuniary loss they suffered between that age and his majority would seem more speculative than that which might be expected when the deceased is slightly over 21. No one can

2. The issue of mitigating or aggravating circumstances is not here involved.

3. In McCrary v. Ogden, Mo., 267 S.W.2d 670, l.c. 676 [12], it was stated: "(Whether our past interpretations of the section [§ 573.090, R.S.Mo.1949], to the effect that recovery is limited to pecuniary loss and in the case of an infant, to the value of services during minority only, are basically correct, may be debatable—but we have consistently so construed the section.)" In the comment following MAI 5.03 it is said: "The committee doubts that the Supreme Court intends to so limit the recovery of a widowed mother whose only son and sole support was

killed a week before his 21st birthday." The difference between that situation and the one at bar is essentially one of evidence; a difference of degree and not of principle.

4. "Apparently, the legislative intent as expressed in Section 537.090 'is to give the jury a broad discretion in computing damages in actions for wrongful death, within the limit prescribed, based upon the pecuniary loss of every kind and character which, under all the circumstances of the particular case, will be sustained by those entitled to recover * * *.'" Hartz v. Heimos, Mo., 352 S.W.2d 596, l.c. 604.

predict with certainty the employment possibilities of a child of 11, as yet too young to have developed any particular talents or aptitudes. See Hornbuckle v. McCarty, 295 Mo. 162, 243 S.W. 327, 1. c. 330, 25 A.L.R. 1508. Yet a verdict for the then statutory limit of $15,000.00 was affirmed for the death of a child of that age in Brewer v. Rowe, supra, and there are other verdicts of the same nature.[5]

██ Be that as it may, the issue before us is simply to determine if defendant did in fact preserve this allegation of error. Plaintiffs' position is that defendant's counsel knew the proper objection to make to plaintiffs' argument for he had made it during the trial upon the occasion when Mrs. Collins was testifying. But even though defendant had that knowledge he chose not to voice that objection and instead objected that such an argument should not be permitted for the reason there was no evidence to support it and it would be purely speculative and conjectural. In his reply brief defendant urges this allegation of error was properly preserved and refers to the motion for new trial. Even if we were to hold that the allegations in the motion for new trial referring to "immaterial and otherwise improper items of damage" might be so liberally read as to be said to encompass a claim that damages beyond the age of majority are not recoverable, it is too well recognized to require citation that such an allegation must be supported by a proper objection. It is in this regard defendant's argument fails. Earlier in the trial there had been a valid objection made and the trial court had correctly ruled upon the objection. However, there was no request that such an objection or ruling should be taken as running to all later proceedings at the trial and there is no issue presented in this appeal with regard to the objection made and sustained while Mrs. Collins was

on the stand. The matter at issue is the propriety of the trial court's ruling upon the objection to the argument made by plaintiffs' counsel. That objection was not based upon any contention the argument must as a matter of law be limited to recovery for loss of services during the deceased's minority but upon the grounds there was no evidence and that such an argument if allowed would be purely speculative and conjectural. Under the state of this record we hold defendant has not properly preserved his contention the trial court erred in overruling his objection to plaintiffs' counsel's argument on the ground that such damages are not recoverable in this jurisdiction.

Defendant's brief assigns another reason in support of its contention the trial court erred in permitting plaintiffs' counsel's argument that is not properly preserved for our review. This is: " * * * (c) such argument was not proper in view of the Court's having sustained defendant's objection to the introduction of any evidence directed to damages which might accrue beyond the age of majority." We cannot so stretch defendant's objection based on the grounds there was no evidence to support the argument and to allow it would be to permit speculation and conjecture so as to encompass this point. Defendant is attempting to present an allegation of error which it did not properly preserve for our review. Our decision on this issue is in keeping with the decision in Hall v. Clark, Mo., 298 S.W.2d 344, 1. c. [14] 350, where an analogous situation was presented. In any event, defendant's argument on this issue is that the earlier ruling of the trial court precluded him " * * * from introducing, by cross-examination or otherwise, any evidence to minimize such damages." Defendant did not make any request to reopen his case and reintroduce any evidence he might have had in mitigation upon the trial court's action reversing its

---

5. It should be noted the court's perusal of such verdicts usually arises from an allegation the verdict is excessive. While defendant's motion for new trial in the instant case contained such an allegation, his brief does not and it is therefore not for our consideration.

previous ruling and stating it would allow plaintiffs' counsel to argue damages accruing to plaintiffs beyond the time when their deceased daughter reached her majority. He was certainly not prevented from making such request by the trial court's ruling.

There remain two allegations of prejudicial error for our ruling. These are: (1) The trial court erred in giving plaintiffs' verdict directing instruction based upon the theory of res ipsa loquitur on the ground that doctrine is not applicable to cases involving dual control private aircraft; and (2) The trial court erred in permitting plaintiffs' counsel to argue damages which might accrue to plaintiffs beyond the age of majority of their deceased daughter upon the grounds that such damages were not proven.

■ With regard to defendant's attack upon the verdict directing instruction, we note § 305.040, R.S.Mo.1959, V.A.M.S., which provides: "The liability of the owner of one aircraft, to the owner of another aircraft, or to aeronauts or passengers on either aircraft, for damage caused by collision on land or in the air shall be determined by the rules of law applicable to torts on land. (R.S.1939 § 15109)" It is clear that while accidents that occur involving aircraft do not necessarily bespeak negligence, the crashing of an aircraft does. It was so held in Cudney v. Midcontinent Airlines, 363 Mo. 922, 254 S.W.2d 662, 1. c. 665, 666, where the court stated: "In Missouri, as elsewhere generally, the doctrine of res ipsa loquitur applies when '(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence.' McCloskey v. Koplar, 329 Mo., 527 loc. cit. 533, 46 S.W.2d 557, loc. cit. 559; Prosser, Torts, Sec. 43, p. 295. * * * Res ipsa loquitur is a part of

the law of evidence, it is 'merely a short way of saying that, so far as the court can see, the jury, from their experience as men of the world, may be warranted in thinking that an accident of this particular kind commonly does not happen except in consequence of negligence, and that therefore there is a presumption of fact, in the absence of explanation or other evidence which the jury believe, that it happened in consequence of negligence in this case. Presumptions of fact, or those general propositions of experience which form the major premises of particular conclusions of this sort, usually are for the jury. The court ordinarily confines itself to considering whether it can say that there is no such presumption, or, in other words, that such accidents commonly are not due to negligence.' Holmes, J., in Graham v. Badger, 164 Mass. 42, 47, 41 N.E. 61." An example of the development of judicial thinking upon the subject can be discerned from a brief examination of two Tennessee cases. In Towle v. Phillips, 180 Tenn. 121, 172 S.W.2d 806, a case decided in 1943, it was said: "* * * Moreover, we are much impressed by an observation of the Supreme Judicial Court of Massachusetts to the effect that we are not as yet in respect to the care and operation of aircraft in a position where the doctrine of cases dealing with stagecoaches or trolley cars or steam railways can be applied." However, by 1962 that same court in Southeastern Aviation, Inc. v. Hurd, 209 Tenn. 639, 355 S.W.2d 436, held the doctrine was applicable to crashes of aircraft, stating at 1. c. 446: "It is true some of the older cases held that *res ipsa loquitur* did not apply to airplane accidents because they were then of common occurrence without negligence (see Towle v. Phillips, 180 Tenn. 121, 172 S.W.2d 806). But, in the last decade or so, the progress of aviation has been such that it has now become an ordinary mode of transportation and is as safe or even safer than other modes so that now plane accidents *do not happen in the ordinary course of things if those who have control use proper care.*" However, defendant does not attack the application of the

doctrine in the instant case on the basis that the accident does not bespeak negligence nor upon the ground the defendant did not have superior knowledge as to its cause, but confines himself to the contention the absence of control prevents the application of the doctrine in the instant case. In this regard the argument made is that since the airplane had dual controls the inference the passenger was operating the aircraft can be drawn as reasonably as can the inference it was being operated by the owner. There is authority for this position. See Budgett v. Soo Sky Ways, 1936, 64 S.D. 243, 266 N.W. 253; Madyck v. Shelley, 1938, 28 Mich. 396, 278 N.W. 110; Morrison v. LeTourneau Co. of Georgia, Fifth Circuit, 138 F.2d 339; Towle v. Phillips, supra. (See In re Hayden's Estate, 1953, 174 Kan. 140, 254 P.2d 813, where, although the action was brought upon a theory of specific negligence, the court held that neither the fact the owner was seated in the lefthand [admittedly the pilot's] seat at take-off, nor that the aircraft there involved could not be taken off or landed from the righthand seat, nor that after the crash the owner was found in the lefthand seat, created a presumption or warranted an inference the owner was at the controls at the time of the crash. See also Parker v. James E. Granger, Inc., 1935, 4 Cal.2d 668, 52 P.2d. 226, where a passenger in a dual control aircraft was shown actually to have had control.)

In this jurisdiction considering the provisions of Section 305.040, supra, and the rulings of our courts to the effect that the doctrine of res ipsa loquitur is applicable if the defendant has the right to control (Cruce v. Gulf, M. & O. R. Co., supra; Smith v. Wabash Railroad Company, supra), we think it clear that the mere existence of dual controls does not in and of itself prevent the application of the doctrine of res ipsa loquitur. Kisling owned the plane and was present in it, and he would be chargeable of the negligence of Cooper even if Cooper had been operating the controls, for he had the "right of control". There is additional evidence in the instant case which we think illustrates the correctness of the trial court's ruling upon this issue. The undisputed evidence was that Cooper did not know of the place where they were going but Kisling did. Moreover, it was Kisling's explanation of his background as a pilot, his skill and experience, that persuaded Misses Collins and Holloway to make the trip. Until he so persuaded them they were not going to accompany the men even though Cooper had identified himself as a licensed pilot. We therefore rule the doctrine of res ipsa loquitur applicable and this case was properly submitted to the jury under this theory. Defendant's contention with regard to the giving of Instruction No. 2 is without merit.

Defendant's contention with regard to plaintiffs' counsel's argument containing items of damages that were not proven arises from an improper understanding of the required quality of such evidence. As we earlier pointed out herein there is some element of speculation or resolving of intangibles inherently involved when a jury seeks to determine the damages that might be awarded surviving parents up to the age of their deceased child's majority. In such cases the award of damages can rest only on considerations of the most general character and much must be left to the common sense of the jury. Hornbuckle v. McCarty, supra, as quoted in the separate concurring opinion of Dalton, J., in Brewer v. Rowe, supra. In that same opinion it is said: "* * * the jury's award must be based, not upon direct, positive *evidence*, but upon probabilities which the jury might reasonably find exist, considering the child's age, condition, health, mentality, personality and perspective, and the parents' ages, attitude and circumstances." To the same effect on this issue see Richeson v. Hunziker, Mo., 349 S.W.2d 50, a case brought by an administrator for wrongful death of a 23-year old son. Therein the following quotation from Domijan v. Harp, Mo., 340 S.W.2d 728, l. c. 734, is quoted with approval: "'The test of the right of recovery under our death statutes is the reasonable prob-

ability of pecuniary benefit from the continued life of the deceased, or a pecuniary injury from the death,—and not that of strict legal dependency. [Citing cases.]'" We cannot agree that damages were not proven in such manner as to justify an inference of decedent's probable willingness and ability to continue in the future the services she had rendered and was rendering to the plaintiffs at the time of her death. The evidence given was actually all that could be given under the circumstances here involved. It is the same evidence that has again and again been held sufficient to allow the jury to infer that such activity on the part of the deceased minor would continue up to the age of majority in cases involving recovery up to such age. Shepard v. Harris, Mo., 329 S.W.2d 1, and cases therein cited at [33]. We see no reason such proof would be held insufficient to allow the jury to infer such activity would continue past majority in cases where parents seek recovery for damages occurring both prior to and beyond the age of majority of their deceased child. In short, it is the imposition of a rule of law that prevents the jury from drawing the inference the child's services would continue past that age. The basis for such a rule has been questioned, McCrary v. Ogden, supra, and never clearly stated, but it is clear the rule does not rest upon any doubts as to the nature of the proof to be offered in such a case. The question of whether this rule of law should be applied in the instant case is one defendant has failed to preserve for our review. We therefore rule this allegation of error against the defendant.

The judgment is affirmed. Defendant is to pay the costs of this appeal.

PER CURIAM:

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is affirmed. Defendant to pay costs of this appeal.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.