Paul PETTY, by his next friend, Lovell Petty, Respondent,

v.

Homer L. HENROID, Appellant.

No. 46362.

Supreme Court of Missouri,
Division No. 1.
June 9, 1958.

Dearing, Richeson & Weier, Samuel Richeson, Hillsboro, for appellant.

Robert A. McIlrath, Flat River, for respondent.

HOLMAN, Commissioner.

Late in the afternoon of August 15, 1955, Paul Petty, a four-year-old pedestrian, received personal injuries when he ran into defendant's automobile as he was crossing East Main Street in Flat River, Missouri. He instituted this action (through a next friend) to recover damages for his said injuries and obtained a judgment in the trial

court for $10,000. Defendant has duly appealed therefrom, contending that plaintiff failed to make a submissible case and that the court erred in giving each of three instructions offered by plaintiff.

The casualty in question occurred at the intersection of Main and Mitchell Streets. Mitchell runs north and south and Main east and west. Main Street at that point has a paved surface eighteen feet wide and a nine-foot blacktop shoulder on each side. The vehicular traffic on Main Street was heavy at that time. The Petty home was located a short distance south of Main Street. On the instant afternoon plaintiff and two brothers had been playing at the Campbell home which was located a few blocks north of Main. Judy Petty, accompanied by Brenda Jones, had gone to bring her brothers home. Two of the Campbell boys were with them. It therefore appears that plaintiff was the youngest of a group of seven children (the oldest was ten) that was proceeding southwardly down Mitchell Street en route to the Petty home.

The two girls were walking some distance ahead of the five boys. When the girls reached the intersection they proceeded across Main Street and stopped on the other side to wait for the boys. When the boys reached Main they stopped and waited for a westbound car to pass. At that time the older boys saw defendant's eastbound car approaching the intersection. According to the witnesses for plaintiff, as soon as the westbound car had passed, plaintiff started to run across the street. At a point one or two feet south of the center line plaintiff ran into the left fender and bumper of defendant's car and was thrown to the north edge of the pavement. His main injury was a fracture of the right femur. A motorist approaching from the west has a view of the instant intersection for at least 450 feet.

Defendant admits that he did not sound a warning or reduce the speed of his car before plaintiff was struck. He testified that he approached the intersection at a speed of 25 or 30 m. p. h.; that he saw the two girls on the right side of the street when he was 120 feet from the intersection but could not see the boys on the left because of the westbound cars; that as he entered the intersection a westbound car cleared the same and then he saw that the group of boys had run into the middle of the westbound lane; that he started to put on his brakes but noticed that the boys had started back off the pavement; that just at that time plaintiff struck his car.

Dale Short, who appears to have had an unobstructed view of the occurrence, testified for the defendant. He was driving westwardly and saw the boys when he was 300 feet from the intersection. He stated that after the car ahead of him had passed the boys, they started across and when they reached the center of the westbound lane most of them stopped, but plaintiff kept going and ran into defendant's car. His exact words were: "Most of 'em run about half-way through the west lane all except the little boy and when they stopped he kept going."

Plaintiff's verdict-directing instruction hypothesized conjunctively that defendant negligently "failed to keep a vigilant watch for children on said street or highway, in or approaching the path of said automobile, and * * * failed to sound any warning of his approach and * * * failed to slow down his automobile * * *." Defendant contends that no submissible case was made because there was no evidence that the hypothesized negligence was the direct and proximate cause of plaintiff's injuries. In other words (even though the submission was one of primary negligence), defendant contends that he should not be held liable unless he could have seen plaintiff in a position of peril in time to have taken one of the hypothesized means to have avoided injuring plaintiff.

▮▮▮ We have concluded that plaintiff made a submissible case. There was evidence from which the jury could reasonably have found that defendant could have seen the children on each side of the street be-

fore his car reached the intersection. That should have alerted defendant to be on guard for some thoughtless or impulsive act which may be expected from young children. Schmidt v. Allen, Mo.Sup., 303 S.W.2d 652. There was also evidence which could reasonably support a finding that defendant could have seen plaintiff from the time he left the group of boys at the edge of the street and proceeded across the pavement. From those facts and circumstances the jury could reasonably have found that the injuries suffered by plaintiff resulted from the failure of defendant to keep a proper lookout and his failure to warn plaintiff of the danger of proceeding across the highway and into the path of his car. Scaggs v. Uetrecht, Mo.Sup., 244 S.W.2d 17.

■ Defendant, however, says that plaintiff cannot rely upon the submission of failure to warn because he alleged in his petition that plaintiff was not oblivious. It is true that in subparagraph (F) of the petition, in attempting to allege humanitarian negligence, it appears that plaintiff alleged that he was not oblivious of his peril. In that connection it may be noted that under certain circumstances it has been said that a warning should be given even though the person is aware of the approach of the vehicle. Spindler v. Wells, Mo.Sup., 276 S.W. 387; Cervillo v. Manhattan Oil Co., 226 Mo.App. 1090, 49 S.W.2d 183. However, we have concluded that the inclusion of the word "not" in the allegation under consideration must have been a typographical error or other misadventure on the part of plaintiff's counsel. Human experience would indicate that even a four-year-old child of normal mentality would not deliberately or knowingly run into the path (or into the side) of an oncoming car which was so near the child that there was no possibility of crossing the street ahead of it. Moreover, the allegation in no way aided plaintiff in alleging humanitarian negligence and, to some extent, tended to bar the possibility of recovery upon a humanitarian submission. Under the circumstances we rule that the instant allegation should not have barred the submission of the primary negligence of failure to warn.

■ We agree with the defendant's contention that prejudicial error was committed in the giving of Instruction P–2 at the request of plaintiff. Therein, after enumerating the elements to be considered by the jury in fixing plaintiff's damages, the instruction further recited, "You are further instructed, that in connection with such damages, if any, the law does not afford you any standard of measurement more accurate than that given you above, but in connection therewith, and all of the evidence relating thereto, you are permitted to take into consideration your common knowledge and experience in life, except that you cannot award plaintiff more than he has sued for in his petition." In the case of Vinson v. East Texas Motor Freight Lines, Mo.Sup., 280 S.W.2d 124, we ruled that almost identical language in a similar damage instruction was prejudicially erroneous. Therein we stated (280 S.W.2d loc. cit. 133): "The quoted language tended to depreciate the accuracy of the 'standard of measurement' and the enumerated elements thereof to be taken into account in the jury's admeasurement of damages, and permitted and encouraged the jurors to take into consideration whatever other conceivable elements they wished in connection with those the court had enumerated. Moreover, the jurors, having read the instruction, no doubt believed they were to consider the amounts which they may have received or, in their experience, knew had been received by others for injuries like or unlike those sustained by Bell, and without restriction and reference to the evidence introduced and the elements of damages as enumerated, but 'in connection therewith.'" See also Downing v. Dixon, Mo., 313 S.W.2d 644, and State ex rel. Burcham v. Drainage District No. 25, Mo.App., 280 S.W.2d 683.

Plaintiff, however, says that the ruling in the Vinson case should not be applied in the instant case because here we are dealing

with a young child and it is difficult to prove damages in such a case with any degree of certainty and hence the jurors should be permitted to apply their common knowledge and experience in life in fixing the amount of the recovery. We have considered the foregoing contention and have concluded that the circumstances disclosed are not sufficient to preclude the application of the reasoning followed in Vinson. In personal injury actions we see no reason why the deficiencies pointed out in the instruction in the Vinson case would not have the same effect upon the jury regardless of whether the plaintiff is a young child or an adult.

■ We will also make brief reference to the contentions of error in regard to Instruction P–3. It recites that if the jury find "that the plaintiff, Paul Petty was a child of 5 years of age; then it was the duty of the defendant to exercise a greater degree of care for Paul Petty's safety for the defendant was charged with the knowledge that children do not have the foresight to exercise the care for their own safety that persons of mature years exercise and their actions are more or less unpredictable." Unquestionably, the instruction is confusing and difficult to understand. It will be noted that it requires that defendant exercise "a greater degree of care" for plaintiff's safety but leaves unanswered the question—greater than what? In Instruction P–1 the jury was told that defendant was required to exercise the "highest degree of care" and that phrase was defined therein. It would seem reasonable to say that the jury, in considering both instructions together, would conclude that Instruction P–3 required defendant to exercise a "greater degree of care" than the "highest degree of care." The instruction was erroneous.

There appears to be no necessity for ruling upon the points raised as to Instruction P–1. Counsel for plaintiff will have the opportunity to re-examine that instruction and make such corrections as may be considered necessary, in view of the attack made thereon by defendant.

The judgment is reversed and cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.