Richard D. OZBUN, an Infant, by His Next
Friend, O. C. Ozbun, Plaintiff-Appellant,

v.

Mrs. W. A. VANCE, Defendant-Respondent.

No. 46970.

Supreme Court of Missouri,
Division No. 1.

April 13, 1959.

Rehearing Denied May 11, 1959.

Jones & Jones, Robert H. Jones, Kennett, for plaintiff-appellant.

Ward & Reeves, James E. Reeves, Caruthersville, for respondent.

VAN OSDOL, Commissioner.

Plaintiff Richard Ozbun, an infant, instituted this action by next friend against defendant, Mrs. W. A. (Myrtle) Vance, for $25,000 for damages for personal injuries sustained when the automobile driven by defendant struck plaintiff as he was running southwardly across County Road "A" in Dunklin County. The jury returned a verdict for defendant, and plaintiff has appealed from the ensuing judgment.

Plaintiff's case was submitted to the jury by his verdict-directing Instruction No. 1–P on primary negligence of defendant in driving the automobile at a speed which was excessive and negligent under the circumstances, and in failing to operate the automobile at a rate of speed that defendant could have avoided striking plaintiff; and, conjunctively, negligence under the humanitarian rule in failing to swerve the automobile to the left and thus avoid striking plaintiff.

Questions of error are presented relating to instructing the jury, and in excluding evidence.

Plaintiff principally relied upon statements of defendant by deposition in making out his case. Defendant, in testifying in her own behalf, was the only witness produced who was an eyewitness of the occurrence.

A few miles southwest of Kennett, County Road "A" of Dunklin County traverses an east-west segment something more than one-half mile in length. On this segment of the highway "A" the traveled portion of the roadway is of tarvia or "blacktop" pavement twenty feet in width with earthen shoulders six feet wide on either side of the pavement. Plaintiff, a child four years old, lived with his parents and his brother eight years old in a house on the south side of the highway.

At approximately eleven-fifteen in a clear morning in June, plaintiff and his brother were standing on the shoulder north of the pavement. They were standing "there with a cow. * * * Grazing, I suppose." Defendant, driving eastwardly, approached in her husband's 1950-model, two-door Mercury. The brakes of the motor vehicle were in good working order, and the tarvia pavement was dry. When one hundred yards away, defendant saw plaintiff and his older brother (and the cow). Defendant was "making about 50. * * * I (defendant) was coming up the road and saw the children out there on the road, and I think I was going something near 50 mile an hour, and I applied my brakes a little bit, just slowed down, and they were still standing there, and I thought to myself I

could go on, I released my brakes and started on, but just about the time I started on this child (plaintiff) started across the road, but he went just a few steps, I don't think it would have been more than five, if it was that many, and turned right around and went back—as he started, though, I applied the brakes again, and he turned around and went back to his brother just like he was handing him something or getting something from him. Well, I started to speed up again, but he did it real quick and started again. Then I applied the brakes with all my might right there."

When the child started across the roadway the first time defendant reduced the speed of the motor vehicle to twenty-five or thirty miles per hour, and when he turned back northwardly, defendant released the brakes and "speeded up." She was thirty feet or more from the point where plaintiff and his brother were at the time plaintiff started across the roadway the second time, plaintiff "was trotting, seemed like, not just a hard run," and "why, he wasn't very far across until I applied the brakes (again)." The center, "a little over to the (right) side," of the hood of the Mercury struck plaintiff, and plaintiff fell on the south side "just about to the edge" of the pavement. Defendant had all but stopped the vehicle. Defendant had driven on the (right) south side of the pavement entirely. There was no traffic "on this highway to the east" of defendant. "I almost got past him. * * * I was on my side, of course."

Plaintiff's mother, having heard the sound of the application of brakes, went to the roadway and carried the injured plaintiff to the Ozbun house. Defendant accompanied them and remarked, " 'I was coming from the Bible School, and I was in a hurry and was driving too fast, and saw I was going to hit the child, and all I knew to do was call on the Lord and throw on my brakes. * * * I was driving too fast, I realize that, and I was in

a hurry to get home and cook my husband's dinner, for I was running late.' "

As we have said, plaintiff submitted his case to the jury on primary negligence of defendant in moving at excessive speed in the circumstances and in failing to operate the motor vehicle at a speed at which she, with available appliances, could have avoided striking plaintiff; and, as stated, humanitarian negligence of defendant, in failing to swerve to the left, was submitted conjunctively in the same instruction (No. 1–P).

At defendant's request the trial court gave verdict-directing Instruction No. 1–D, which was as follows,

"The Court instructs the jury that if you find and believe from the evidence that the Plaintiff started running from the north shoulder of County Road 'A' toward the south and into the path of Defendant's approaching automobile and was thereby struck on the south half of the said road at the time and place mentioned in evidence, and that when plaintiff started running, as aforesaid, the automobile operated by the defendant was in such close proximity to the plaintiff, that the defendant in the exercise of the highest degree of care could not have avoided striking the plaintiff by stopping the automobile, slackening the speed thereof, or swerving the same, and if you further find that defendant was not guilty of any negligence as submitted to you in other instructions, then your verdict must be for the defendant and against the plaintiff."

Plaintiff (appellant) complains that the instruction (No. 1–D) erroneously limited the submitted negligent (primary and humanitarian) conduct of plaintiff to the time plaintiff for the second time started running southwardly from the north shoulder. Moreover, plaintiff says, the instruction is confusing and misleading, and is in conflict with Instruction No. 1–P given in behalf of plaintiff. But defendant (respondent) contends the Instruction No. 1–D is a con-

verse humanitarian rule instruction in the sense that it required a finding of the negative of an essential element of plaintiff's humanitarian rule submission—the ability of defendant to act, after plaintiff was in a position of imminent peril; that Instruction No. 1–D should not be said by plaintiff to be erroneous in unduly restricting the zone or position of peril, because plaintiff's Instruction No. 1–P restricted the submission of the humanitarian duty to act to avert plaintiff's injury to the time "when plaintiff Richard Ozbun started to cross said highway." Defendant further contends plaintiff failed to make a case submissible to the jury on the theory of humanitarian negligence because (it is said), since defendant, moving at twenty-five to thirty miles per hour when but thirty feet from plaintiff (at the time he started running across the roadway the second time) could not have thereafter acted in averting the casualty. And furthermore, defendant says, even if it were assumed that Instruction No. 1–D is subject to criticism as contended by plaintiff, the plaintiff's contention here was not preserved for review because different and specified or particularized grounds of error in giving the instruction were assigned by plaintiff in his motion for a new trial.

 Since it is our opinion that the trial court erred in excluding evidence, we shall not anticipate the question and pause to determine mathematically whether defendant could have acted in averting the casualty, after plaintiff for the second time started to run out onto the roadway; neither is it necessary to decide whether the parties plaintiff or defendant were too strict in limiting the zone or position of peril to the movement of plaintiff out onto the roadway the second time, nor shall we examine the evidence from the standpoint of its sufficiency in supporting the submission of humanitarian negligence. Indeed, it has been difficult for us to see why it was that plaintiff desired to submit humanitarian negligence at all. However, as to plaintiff's complaint of defendant's Instruction No. 1–D with respect to restricting the position

of imminent peril to the time when plaintiff "started running from the north shoulder," we have already noted that plaintiff's Instruction No. 1–P submitted plaintiff's position of peril as of the time plaintiff "started to cross said highway." And certainly we cannot approve plaintiff's Instruction No. 1–P as to its form in submitting primary negligence and humanitarian negligence conjunctively, and not clearly independently, and in the same instruction. The instruction tended to confuse the issues of specific negligence and humanitarian negligence which were not so independently submitted as to make clear to the jury that the antecedent conduct as to speed was not to be taken into account by the jury in determining the issue of humanitarian negligence. In this state of confusion defendant's Instruction No. 1–D was in no way a clarification. Although we are aware that defendant had verdict and judgment in the trial court and that a plaintiff is ordinarily bound by his trial theory, nevertheless, we now gratuitously say defendant's verdict-directing Instruction No. 1–D, if it were assumed the issue of humanitarian negligence was submissible and if primary negligence and humanitarian negligence had not been submitted conjunctively, would have been prejudicially erroneous. It is settled that where a plaintiff has submitted both primary and humanitarian negligence, an instruction which directs a verdict for defendant and ignores plaintiff's right to recover under either submission is erroneous. Sauer v. Winkler, Mo.Sup., 263 S.W.2d 370; Hensley v. Dorr, Mo.Sup., 191 S.W.2d 663; Collins v. Beckmann, Mo.Sup., 79 S.W.2d 1052. Defendant does not contend plaintiff did not make out a case upon primary negligence.

Hereinbefore, we have noted that defendant's verdict-directing Instruction No. 1–D specifically hypothesized that, when plaintiff started running, the automobile operated by defendant was in such close proximity to plaintiff that defendant in the exercise of the highest degree of care could not have avoided striking plaintiff, and without any

hypotheses of facts which would absolve defendant from responsibility for her antecedent conduct submitted as primary negligence in plaintiff's Instruction No. 1–P. Now, still assuming that the issue of humanitarian negligence was submissible and if primary negligence and humanitarian negligence had not been submitted conjunctively, we add that, having directed the jury's attention to a specific set of facts hypothesized as absolving defendant from responsibility for humanitarian negligence but omitting from the hypotheses the further essential facts which if found to be true would negate antecedent primary negligence as submitted in behalf of a plaintiff, it would seem that a defendant could not supply the omitted essential facts by a general "catchall" phrase such as "and if you further find that defendant was not guilty of any negligence as submitted to you in other instructions," which clause at best, in a verdict-directing instruction such as defendant's Instruction No. 1–D given in this case, is confusing and misleading. See Rohde v. St. Louis Public Service Co., Mo.Sup., 249 S.W.2d 417, at page 421.

We now treat with the contention of error in the exclusion of evidence, the exclusion of which evidence in the trial of the cause may well have affected and cast the jury's finding and verdict.

Upon plaintiff's offer, the trial court excluded a question and defendant's answer thereto in a deposition as follows,

"Q. * * * Mrs. Vance, referring back now to the time that this little boy first started across the highway, and when you said you applied your brakes, and then when the boy turned back you released your brakes and speeded up; could you, if you had not released your brakes and speeded up, could you have stopped the car at the rate of speed you were then traveling with reasonable safety to yourself and your car before striking the boy? * * *

"The Witness: Well, I guess I could have."

The trial court's stated reason for excluding the question and answer was that the "question calls either for a statement of fact or an expert opinion, if Mrs. Vance knew whether she could have stopped or not she could testify, or if she could qualify as an expert, but the objection to the question is sustained."

At this point, and preliminary to determining the contention of error in excluding the quoted question and answer, we shall refer to the evidence set forth supra in connection with the duty defendant may be reasonably said to have had in approaching the place of the casualty in the circumstances shown in evidence.

According to her own testimony, defendant saw the two children, apparently standing near the tethered cow on the north side or shoulder of the highway, when defendant was approximately three hundred feet away. The situation surely suggested danger. Defendant reduced the speed of the motor vehicle and observed plaintiff start across the roadway the first time and then saw him dart back. Defendant then, moving twenty-five to thirty miles per hour, released the brakes and "started to speed up" again. It seems to us it is reasonable to say that, in the circumstances of her approach, knowing a child (or children) of tender years was on the highway or on or near the roadway, defendant, in the exercise of the highest degree of care, should have taken precautions commensurate to the danger potential in such a situation and so should have managed and continued to manage the motor vehicle as to its speed and movement that she could have avoided a casualty, whatever the conduct or movement of the child was at a given moment, during defendant's approach, such as would apparently indicate the child's intention or lack of it to dart on or off the roadway.

We think it is commonly known that acts of a child four years old are wholly unpredictable; and that a child of such tender years, being engaged in play or other preoccupations on or near a roadway is al-

most entirely devoid of an appreciation of danger. We have said "greater precautions are necessary to fulfill the duty to children of tender years than to adults." Fortner v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 10, 14; Kube v. St. Louis Transit Co., 103 Mo.App. 582, 78 S.W. 55. So we say it reasonably could have been found, under the facts of this case, that defendant, in the exercise of the highest degree of care, should have taken into account this acutely potential danger of injury to this child plaintiff and operated the motor vehicle at a speed, or at reduced speed, or should have taken whatever other precautions reasonably necessary to guard against and avoid the danger and injury. Petty v. Henroid, Mo.Sup., 313 S.W.2d 688; Schmidt v. Allen, Mo.Sup., 303 S.W.2d 652; Fortner v. St. Louis Public Service Co., supra; Kube v. St. Louis Transit Co., supra. See also the recent case of Thomas v. Kimsey, Mo.Sup., 322 S.W.2d 754.

■ Now attending the question and answer of defendant by deposition quoted supra—here we have the question of the admissibility of an extrajudicial statement or utterance of a party. The statement, that is, defendant's quoted answer to the quoted question, was not even offered as "opinion" evidence, and its admissibility was not to be determined by the qualification or knowledge of plaintiff, a party; that is, the admissibility of the statement was not to be limited by the "opinion rule." Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S.W.2d 618. We have no question here relating to opinions or conclusions of a witness who is not a party; and the cases of Linam v. Murphy, 360 Mo. 1140, 232 S.W.2d 937, and Fishang v. Eyermann Contracting Co., 333 Mo. 874, 63 S.W.2d 30, cited by defendant-respondent, are not in point. And it was not material that the statement would or would not have been independently receivable in the testimony of a qualified witness, not a party. The answer in response to the question is to be considered as an extrajudicial admission (Wigmore would have preferred to call it "a quasi-admission" as

distinguished from a true or judicial admission). The question propounded to defendant here produced an answer and statement of an opinion as to a material fact or inference which reasonably would support a conclusion inconsistent with defendant's defense that she was free of fault in striking plaintiff as plaintiff had alleged. That is to say, by her answer, although expressed, "I *guess* I could have," defendant reasonably may be said to have conceded that she thought that, had she not released the brakes and speeded up (at the time stated in the question), she could have avoided striking plaintiff. The inconsistency of her answer with the position she was taking in her own defense gave the answer logical relevancy and probative force. We do not have any doubt but that the trial court should have admitted the quoted question and answer into evidence and that the exclusion of this evidence was prejudicial—it was evidence which would have tended to support plaintiff's claim and to negative defendant's defense because it was consistent with plaintiff's claim as to negligent speed and inconsistent with defendant's defense. Of course, this extrajudicial admission by defendant should not be considered as conclusive upon her. It was but an evidentiary matter material and relevant to the issue of defendant's negligence and was, or should have been held admissible to be considered by the jury whose province it was to give it whatever weight and value the jury might have deemed appropriate along with other shown facts and circumstances of the case. Grodsky v. Consolidated Bag Co., supra, and cases therein cited; Friedman v. United Rys. Co. of St. Louis, 293 Mo. 235, 238 S.W. 1074; Vosburg v. Smith, Mo.App., 272 S.W.2d 297; Vol. IV, Wigmore on Evidence, 3d Ed., §§ 1053, 1058 and 1059.

We shall not prolong this opinion by an unnecessary discussion and determination of plaintiff's contentions of error or abuse of discretion in the trial court's rulings, during voir dire, upon challenges for cause of several veniremen. We assume counsel and

the trial judge will consider these contentions and any future contention of error in qualifying a jury will be obviated.

The judgment for defendant should be reversed, and the cause should be remanded.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.