Robert Earl HARRIS, a Minor, by Servisa Harris, His Natural Mother and Next Friend, Plaintiff-Respondent,

v.

Richard LANE, Defendant-Appellant.

No. 31625.

St. Louis Court of Appeals.

Missouri.

May 19, 1964.

Motion for Rehearing or to Transfer to Supreme Court Denied
June 22, 1964.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, Burton H. Shostak, R. E. Keaney, St. Louis, for defendant-appellant.

Gray & Jeans, James W. Jeans, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

On January 31, 1962, about 12:25 P.M., plaintiff, then seven years of age, was struck by defendant's automobile as he attempted to cross Etzel Avenue near its intersection with Blackstone, in the City of St. Louis. In this subsequent suit, brought on his behalf by his mother and next friend, a trial by jury resulted in a verdict and judgment in favor of plaintiff for $4,000. Defendant's timely appeal followed the overruling of its after-trial motions.

Plaintiff's only evidence as to the manner in which the accident occurred consisted of excerpts read from the deposition of defendant. Defendant offered no evidence in his own behalf, and stood upon his motion for a directed verdict. As his initial point, defendant strongly contends that the court erred in overruling his motion because there was insufficient evidence to make a submissible case. Since plaintiff's sole submission was on a failure to keep a careful and vigilant lookout, our inquiry as to the sufficiency of the evidence is limited to such actual submission. Evett v. Corbin, Mo., 305 S.W.2d 469; Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91.

Emulating the example set by defendant's counsel in his brief, we state in narrative form the excerpts read from defendant's deposition, except where the

questions and answers are of special significance. Such evidence was as follows:

My name is Richard Lane. I was involved in an accident on Wednesday, January 31, 1962, about 12:25 P.M. I was driving a '58 Olds automobile. The weather conditions were good.

"Q. How wide is Etzel Avenue?

"A. Four lanes, two parking and two traveling lanes. It is a two-way street. I was headed eastwardly (on Etzel).

"Q. Did this accident occur near any intersection?

"A. Blackstone."

Blackstone comes into Etzel from the north. It is not a through intersection. Blackstone, at its intersection with Etzel, is approximately the same width as Etzel. I was driving on the right side of the street. The left side of my car was approximately a foot from the center line as I approached the intersection. My car came in center line as I approached the intersection. My car came in contact with a young boy. I saw the boy before I struck him. He was in the street when I first saw him. He was south of the center line when I first saw him. He was directly in my path. The car I was driving was possibly four and a half, five feet, wide. It would be a fair statement to say that the boy was within five feet of the center line when I first saw him. He was approximately four feet in front of my car when I first saw him. The left front bumper of my car struck the lad. He was struck by the side of the bumper, right at the very corner of the automobile. It would be a fair statement to say that I just barely avoided hitting him, that I came within a very minute second and space of time and distance from hitting the boy. He was running at the time he was hit.

"Q. And did he run from the time you first saw him up until the time he was hit?

"A. Yes.

"Q. He didn't stop or hesitate or anything?

"A. No."

My car was in excellent mechanical condition that day. The brakes were excellent.

"Q. Mr. Lane, I want to make sure that you understood this one question I previously put to you. Is it true that when you first saw the boy that he was only about four feet in front of your automobile; is that what you had said?

"A. Well, that is an approximation. That is approximately, yes.

"Q. I appreciate that we can't always be too certain, but that is just about the distance that separates me from you here as we are talking. Four feet, that is about— less than even the length of this desk. That is your best judgment then; is that right?

"A. Yes. I was pretty close."

Mrs. Servisa Harris, plaintiff's mother, who was away at work at the time of the occurrence, testified that she was then living at 5700 Etzel Avenue, second floor east; that she lived on the south side of Etzel; and that her house faced northwardly into Blackstone.

Recognizing the paucity of facts furnished by the foregoing evidence, and in answer to various deficiencies pointed out by defendant, plaintiff argues that he was also entitled to those inferences which would tend to prove defendant's failure to keep a lookout and the causal connection between such failure and plaintiff's injury. We agree, provided that the inferences may reasonably be drawn from the facts in evidence. State ex rel. City of St. Charles v. Haid, 325 Mo. 107, 28 S.W.2d 97; Steele v. Woods, Mo., 327 S.W.2d 187; Hildreth v. Key, Mo.App., 341 S.W.2d 601. Thus we

agree that it may be inferred that plaintiff was crossing from the south to the north side of Etzel—because when first seen by defendant, plaintiff was five feet from the center line, running northwardly, and continued in that direction until the collision occurred. We also agree that defendant's car was moving at the time the contact occurred—because defendant implied that his automobile "struck" plaintiff. We further agree that the speed at which plaintiff was running and that at which defendant's car was traveling were approximately the same —because plaintiff was five feet south of the center line and four feet in front of defendant's automobile when first seen, and was approximately one foot from the center line when struck by the car. Lastly, while there was no evidence as to either the speed of plaintiff or that of defendant's vehicle, we agree with plaintiff that it may reasonably be inferred that plaintiff, seven years of age, could run at a speed of ten miles an hour for a short distance. Vietmeier v. Voss, Mo., 246 S.W.2d 785; Edwards v. Dixon, Mo.App., 298 S.W.2d 466; and since they covered the same distance in the same period of time, that defendant's automobile was likewise traveling at a speed of ten miles an hour.

However, having accompanied plaintiff as far as possible down his path of inferences, we come to a parting of the ways. Plaintiff's argument proceeds on the assumption that plaintiff was five feet from the center line and fifteen feet from the south curb of Etzel when he was first seen by defendant. Based on that assumption, and on the fact that plaintiff almost escaped the collision, plaintiff contends that " * * * the least evasive action on the part of the defendant would have been effective to have avoided the injury. * * *" This by no means follows. In the first place, there is no evidence in the record to justify plaintiff's assumption that Etzel was forty feet wide. All that appears in evidence is that it was four lanes wide, two parking lanes and two traveling lanes. Furthermore, whether defendant had sufficient time to

have taken such evasive action as would have averted the accident would depend upon when he could first have seen plaintiff.

We reach, then, what plaintiff correctly calls " * * * the most important question * * *" in the case—when could defendant have first seen the plaintiff? The defendant, as the operator of a motor vehicle, was, of course, under a duty to maintain a lookout ahead and laterally. Evett v. Corbin, Mo., 305 S.W.2d 469. This included the duty to see an observable pedestrian even though he was on the shoulder of the highway. Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935. Because of the common knowledge that the acts of children of tender years are wholly unpredictable, our courts have said that greater precautions are necessary to fulfill the duty to children of tender years than to adults. Ozbun v. Vance, Mo., 323 S.W.2d 771; Fortner v. St. Louis Public Service Co., Mo., 244 S.W.2d 10. And to have failed to see what could have been seen by proper observation in the exercise of the highest degree of care would have been as much negligence as not to have looked at all. Wright v. Osborn, supra; Miller v. Williams, Mo., 76 S.W.2d 355. But the duty to see what could have been seen, had one looked, presupposes that the person or object was visible and in plain view. Obviously, one cannot be held negligent for failing to see that which, because of some obstruction to his view, one cannot see, or cannot see until it is too late to take effective evasive action. Levin v. Caldwell, Mo., 285 S.W.2d 655. When, therefore, the negligence charged is the defendant's failure to maintain such a lookout as would have enabled him to have observed the plaintiff sooner than he did, it is incumbent upon the plaintiff to show that he was in a position where he could have been seen had the defendant looked. O'Neill v. Claypool, Mo., 341 S.W.2d 129; Hartlage v. Halloran, Mo.App., 331 S.W.2d 197. The mere happening of the accident, terrible though it may be, does not establish negligence on the part of a motorist, Joplin v.

Franz, Mo.App., 240 S.W.2d 209, and the burden of proving the facts and circumstances necessary to establish the issue of negligence submitted to the jury is on the plaintiff. Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316. Nor does the fact that plaintiff was but seven years old and defendant an adult shift the burden of proof from plaintiff to defendant. Vietmeier v. Voss, supra.

■ The weakness in plaintiff's case is that there is no evidence tending to prove that plaintiff was in plain view as defendant approached the intersection, or that defendant could have seen him any appreciable length of time sooner than he did. Plaintiff cites Petty v. Henroid, Mo., 313 S.W.2d 688; Scaggs v. Uetrecht, Mo., 244 S.W.2d 17; Hildreth v. Key, Mo.App., 341 S.W.2d 601; and Edwards v. Dixon, Mo. App., 298 S.W.2d 466, in support of his argument that defendant was under a duty to discover plaintiff before plaintiff left the curb. But in each of those cases it was shown that the injured child was in plain view and could have been seen on the side of the road or street at an earlier time had defendant kept a proper lookout. Such evidence is totally lacking in the instant case. Plaintiff deprecates defendant's suggestion of what plaintiff terms " * * * the ubiquitous parked car * * *," and argues that an application of the appropriate rules of evidence eliminates that possibility. This, says plaintiff, because certain ordinances of the City of St. Louis prohibit the parking of cars on a cross-walk or within an intersection (here between the east and west cross-walks across Etzel); and because the law presumes compliance with existing regulations, and right and proper conduct. But the application of an equally appropriate rule requires us to reject this ingenious argument. The ordinances referred to by plaintiff were not introduced in evidence, and since 1848 it has been the rule in this state that courts cannot take judicial notice of city ordinances. Cox v. City of St. Louis, 11 Mo. 431; Peterson v. United Rys. Co. of St. Louis, 270 Mo. 67, 192 S.W.

938; City of St. Louis v. Capitol Vending Co., Mo.App., 374 S.W.2d 519. Furthermore, there was no evidence that the accident occurred on a cross-walk or even in the intersection; defendant's testimony was that it was "near" Blackstone. And even if we assume that plaintiff was running on a cross-walk it may well have been that an automobile parked to the west of and immediately adjacent to the cross-walk might have blocked defendant's view of plaintiff until he emerged from behind the car. We note, for example, that there is no evidence in the record as to plaintiff's height, as in Wright v. Osborn, supra.

■ Absent evidence as to when and where defendant could have seen plaintiff, and where his automobile was at the time, the charge that defendant failed to keep a proper lookout rests on nothing more than surmise and conjecture. Hartlage v. Halloran, supra. We are of the opinion that the plaintiff did not make a submissible case and that the court therefore erred in overruling defendant's motion for a directed verdict.

For the reasons stated the judgment should be reversed. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment is reversed.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.

On Motion for Rehearing

PER CURIAM:

In his motion for a rehearing or, in the alternative, to transfer this cause to the Supreme Court, plaintiff complains that we overlooked certain evidence favorable to the plaintiff. We believe that in the opin-

ion it was made abundantly clear that the accident involved an almost-escaping situation, but so that there may be no doubt regarding the facts we quote at length defendant's testimony as read from his deposition:

"Q (By plaintiff's counsel) What part of your car struck this lad?

"A The left front bumper." ·
"And on page 11 at the bottom (reading):

"Q When you say he was struck with the left front bumper, the impact came from the front of your car, I assume; it was the front bumper? Some of these bumpers are wrap-around bumpers. Did you strike him with the front of your bumper?

"A No, the side.

"Q Right at the very corner of the automobile?

"A Yes, sir.

"Q With your hitting him at the very corner of the automobile and not proceeding on past him, would it be a fair statement to say that you just barely avoided hitting him; is that right, you came within a very minute second and space of time and distance· from hitting the boy?

"A Yes.

"Q Was he running at the time he was hit?

"A Yes.

"Q And did he run from the time you first saw him up until the time he was hit?

"A Yes.

"Q He didn't stop or hesitate or anything?

"A No."

Plaintiff also takes exception to our statement that "there is no evidence *in the record* as to plaintiff's height" (Emphasis ours.), and points to that part of the transcript showing that plaintiff stood by the jury rail and exhibited the injury to his lip and mouth. All that the transcript reveals is that there was a jury rail, and that plaintiff was tall enough to be seen over it. But the *record* does not indicate the height of the rail, nor the distance, great or small, which plaintiff rose above it. Are we to be expected to speculate therefrom that plaintiff was tall enough to be seen over the hood of a parked car — or truck?

■ Lastly, plaintiff contends that we are compelled to take judicial notice that a four-lane residential street in the City of St. Louis is at least 36 feet wide. We note, in passing, that plaintiff has reduced the width from the 40 feet originally mentioned in his brief. To take judicial notice that the minimum width of such a street is 36 feet would be directly contrary to our personal knowledge of the many four-lane streets in residential areas of St. Louis which are narrower than the figure contended for by plaintiff.

■ The gist of plaintiff's charge of negligence was the alleged failure of defendant to maintain such a lookout as would have enabled him to have observed plaintiff in time to have avoided the accident. The burden was on plaintiff to produce evidence that he was in a position to have been seen had the defendant looked. Absent such evidence we˙ cannot supply the deficiency by speculation, conjecture, or unwarranted judicial assumptions.

Plaintiff's motion for a rehearing or, in the alternative, to transfer this cause to the Supreme Court, is overruled.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.